All right, our final case for today is Martinez-Baez against William Barr, Attorney General, and we begin with Mr. Cabranes. Thank you. At the outset, I thank the court for allowing me to present the argument. May it please the court, this is a rather straightforward case. Mr. Martinez-Baez presents to the court that the IJ's decision was arbitrary and capricious, and it was arbitrary and capricious because the IJ completely disregarded the testimony of the respondent regarding his continuous presence in the United States and his ability and the ability of his daughter to continue her therapy in Mexico. Mr. Cabranes, would you please begin by addressing jurisdiction? What is the legal or constitutional issue at stake here? You know, because there was no reply brief, you did not respond to the government's argument that we lacked jurisdiction to review the denial of discretional relief. Well, the court has jurisdiction on two separate bases, and I addressed that initially under the in the brief for the issue regarding Just a minute. That the court can review the details, the specific facts related to continuous presence. With regards to the Before you go further with that thought, Mr. Cabranes, I would say that the quite against you in that we regarded mixed questions of law and fact as within the subpart B, jurisdiction stripping, not within the subpart D. Then the Supreme Court, though, of course, has now just come along with Guerrero-Lasprilla, and it could be that we need to rethink our understanding of the scope of subpart D. So we would have to be persuaded by you that there were applications of legal standards to facts that are reviewable here, and I would like to know what you think those may be. Well, that is part of the problem, Your Honor, because I don't believe that there was any application of the facts to any legal standards. So you think that was a procedural error? The board just didn't or the IJ just didn't connect the dots? I believe that's exactly what happened here, and I think that if the court looks at the Supreme Court's decision in Marsh, Marsh basically holds that it's arbitrary and for lack of a better way of describing it, there has to be an application of the testimony of the facts to what the law is, and it doesn't appear that that actually occurred here. So let's take continuous presence. You know, Mr. Martinez-Baez testifies, I gather, you know, that he came at some point during the year 2000, and as far as I can tell, the immigration judge doesn't necessarily disbelieve him, but as is his prerogative under the Real ID Act, the immigration judge says, I need some corroboration. So we don't quite have a situation where we have yes, evidence of 2000 entry versus nothing. That would be a pretty easy ruling for Mr. Martinez-Baez, but the problem is this statute does allow immigration judges to request further corroboration. So what do you do with that? Well, Your Honor, the issue from our standpoint is that, first of all, the testimony of the respondent has to have some worth, has to have some weight to it. The IJ is- And it does, for sure, but what do you do with the fact that even though it has some weight, the law allows the immigration judge to request corroboration? Now, he could have come back and said, you know, I tried to go to my employer, but because I was using an alias, you know, my employer refused to give me any records. You know, in other words, he could make a showing that the corroboration wasn't available, which the law also understands. But I don't understand that he did that. Well, I believe that he did testify that he had made attempts to acquire the information, but the information was just not acquirable. And I think that's actually in the transcript, and if the court wishes, I can locate that specific area in the transcript. But I understand what the court is indicating. Our position is that the IJ doesn't appear to have given any weight at all to the respondent. And in fact, the corroboration would have come from the chief counsel's office, because during Mr. Baez's cross-examination, there was, his initial testimony was, I came in in May or June of 2000. Under cross-examination from the chief counsel, he admitted that he had been detained by Customs and Border Patrol in July of 2000, and then he returned to the country shortly after that. So the corroboration would have been in the detention. There would not have been, there was not any document that Mr. Martinez-Baez had in his possession or could have gotten, which would have been corroborative of his entry in May or June of 2000, or even in July of 2000. Well, I mean, it has to be continuous presence. You've got to find an entry that wasn't interrupted. That is, that's true. And his testimony was that he came in and he didn't leave. So the issue then becomes, you know, having, dealing with the Real ID Act, when there is uncontested evidence, and the evidence would be the respondent's testimony, which is not contested, and there's no adverse credibility discrimination. Before we run out of time, let me quickly ask you about the extreme hardship to Melanie, the daughter, because that too seemed to me to be very much a question of judgment. You know, how bad was her speech disorder, her stuttering? And the immigration judge looks at the expert and says, it may not have been, she's obviously in need of assistance, but it wasn't all that bad. And so, the immigration judge, that sounds like such an exercise of judgment to me. I don't see where we find a legal or constitutional issue in there. Well, the actual decision by the immigration judge's decision focuses on the issue regarding the fact that an IEP had been submitted and enough information so that he could make sense of the IEP was not provided. Well, the IEP is, it's our position is that the IEP kind of lays the groundwork for Ms. Mitton's testimony. And so, Ms. Mitton testified that she would have significant hardship if her therapy was discontinued. And Mr. Martinez-Bias testified that he would not be able to, A, afford having the therapy continued, and that his ability to find a place that would do it because the schools there don't do it was in question. So, the issue was that Ms. Mitton testified that she would not be able to, and it doesn't appear that the immigration judge gave any consideration at all to Ms. Mitton's testimony or to Mr. Martinez-Bias' testimony. All right. Well, I think we have to call it quits right for the moment. I will give you a little bit of rebuttal time, and we'll move to Mr. Lane. Thank you. Your Honors, and may it please the Court, William Lane of the Department of Justice, on behalf of Respondent. Mr. Lane, before you begin, forgive me, but is the government essentially conceding that the petitioner meets the continuous presence requirement? I saw on, you know, page two of your brief, you assert that he entered the United States in 2000. Your Honor, the government is not conceding that. The government's position is that if this Court were to agree with petitioner that the case had to be remanded to the BIA for the hardship question, the BIA is allowed an opportunity to reach that question. The BIA specifically reserved judgment on that point. Thank you. Petitioner Cesar Martinez-Bias challenges the immigration courts and Board of Immigration Appeals' evaluation of his request for cancellation of removal due to his claim of an exceptional and extremely unusual hardship. But this Court lacks jurisdiction to consider such a challenge to the agency's discretionary determination. But, you know, Mr. Lane, the law has shifted. You have a little footnote in your brief that I think Guerrero-Lasprilla needs more than a footnote, because this Court, I think, quite consistently with what the Department of Justice had urged, had taken a very rigid approach to what was within 1252 A2D. But now the Supreme Court has broadened the scope of this authority. And there are a number of things about the way both first the IJ and then the Board handled Melanie's situation that are quite disturbing to me. There's this legal standard, extreme and etc. hardship, and then there are the underlying facts where I think the Board was asking, in some sense, the wrong question. Maybe Melanie was doing fine when she was under daily treatment for her stuttering, but the question wasn't that. The question was, how will she do without that treatment? And, you know, the application of these facts to the legal standards, what were being asked, obviously deferential review still, I wouldn't doubt that for a second. But I'm not sure that the ground has hasn't shifted in an important way. Well, Your Honor, a few things on that point. You know, we obviously mentioned Guerrero in the brief, because we know that it's a developing area of the case law. But a couple things on that, Your Honor. Guerrero did not involve a discretionary determination of the agency. We think that makes this different. Guerrero also made clear that it was involving the application of a legal standard to undisputed facts. We don't have undisputed facts here. We have a question of the immigration judge weighing the facts and whether the facts weighed in petitioner's favor or not. I would posit, Your Honor, if we decided, if this Court decided that Guerrero applied in this case and that there was jurisdiction, it would basically render out of existence the provision in the INA that forbids jurisdiction, because there really would be no situation in which the immigration judge or the Board of Immigration Appeals could consider evidence and not have it reviewed. So, Your Honor, that would actually write out the statute. Well, but the Supreme Court has language. I'm not sure it would. Actually, I think there did you get thrown in prison in the middle of 2007 or did you not? I mean, there are all kinds of factual questions that would be for the immigration judge to resolve. The Supreme Court is concerned, they say, lest Section 2D foreclose judicial review of the Board's determination so long as it announced the correct legal standard. And that seems to me to leave some room for the resolution of factual issues. And in this instance, nobody doubts that Melanie has a stutter. The question is, you know, how, what's going to happen in the future? I don't know how the future is ever an undisputed or established fact. This is a predictive standard in this case, which is a little different. Well, Your Honor, what you just invoked actually goes to, I think, the answer here is both the immigration judge and the Board of Immigration Appeals made the determination that not only was the evidence that was presented insufficient to show a severity, to show that Melanie would suffer the requisite hardship standard, but also simply that just not enough evidence was presented. The immigration judge was pretty clear on this. But why didn't, why didn't, why wasn't there a more thorough discussion of Mitten's opinions, for example? Or why, why weren't they more careful about saying, you know, that somebody may, as I said, be coping with the right kind of professional assistance, but as soon as that assistance is stripped from her, she won't be. The extreme hardship might exist. You're going to put a kid who stutters in a Spanish school and she doesn't speak Spanish and there are no help available? Well, Your Honor, so to my friend's point that the immigration judge did not reference Ms. Mitten, which I think is what Your Honor is referencing, in part at least, that's simply not true from the immigration judge's decision. If you look at AR-48, Ms. Mitten is mentioned by name and discussed. And if you look at AR-51, the immigration judge sums up the testimony of two witnesses and he's discussing Ms. Mitten. So that's completely different. But the board doesn't. I'm looking at the board's opinion. The youngest child has a stuttering condition, brief vague claim, he hasn't submitted evidence that his daughter would be unable to obtain treatment in Mexico, boom. Yes, Your Honor, I direct you to the bottom of AR-3, the first page of the board's opinion, where the board referenced the condition as mild to moderate. That was a direct quote from Ms. Mitten, who was describing the condition. And what I was just quoting, Your Honor, was referencing was the immigration judge's opinion, which again mentioned Ms. Mitten by name. Right. Also mentioned the testimony. But we're reviewing the board, right? Or in your view, are we reviewing the IJ here? I'm sorry, Your Honor. Who are we reviewing, the board or the immigration judge? Your Honor, in this case, you're reviewing both the board's decision and the immigration judge's decision. As the board of immigration appeals largely deferred to the evidentiary findings of the immigration judge. And again, Ms. Mitten's testimony is discussed in depth by the immigration judge. And she reached a number of conclusions based on that testimony. For instance, the severity of the condition, because Ms. Mitten herself described it as mild to moderate. There is also not sufficient evidence presented, as the immigration judge made clear. To back up, Your Honor, there are two options here. What can happen to petitioner's daughter? Obviously, petitioner's daughter could remain in the United States or petitioner's daughter could travel if petitioners were moved to Mexico. Petitioner himself noted that he's not sure which option he would take with his children. The immigration judge mentioned that if petitioner's daughter were to remain in the United States, there's nothing stopping her from continuing to get treatment for Ms. Mitten. Ms. Mitten's testimony shows that treatment can continue. It's provided by the public school system. The other option, of course, is petitioner's daughter could travel with petitioner to Mexico. Ms. Mitten, obviously, presumably, would not travel to Mexico with petitioner's daughter. However, the immigration judge said simply, you know, petitioner noted, I'm not sure if that treatment's available in Mexico. I don't think it's provided by the public school system. I don't know where I would look. But he didn't present evidence beyond that. So, you have these two options. And then even if the daughter returned to Mexico, based on the immigration judge's analysis of the testimony, again, from Ms. Mitten and then from petitioner himself, the immigration judge concluded, you know, this condition is, obviously, it's affecting the daughter, but it's not, it doesn't rise to the exceptional and extremely unusual hardship standard, which is a high standard, which was, I should note, petitioner's burden to make. Now, this may have been a different case if this was the government's burden to prove otherwise. But this was statute puts it exclusively on the petitioner to make this case. And the immigration judge says, look, you simply didn't give me enough to make a decision here. And the evidence you did give shows that it wasn't severe enough. I would reference specifically on the bottom of AR 51, where the immigration judge sums up those findings, which are pretty clear on that point. And again, relying specifically on the testimony of Ms. Mitten. Remind me how old Melanie is? She's the youngest of the children. Yes, Your Honor. She was eight years old at the time the brief was written. I'm actually not sure if she's had a birthday since then. All right. So we're going to have an eight-year-old stay in the United States by herself? Is that it? No, Your Honor. She's under the care of her mother. She actually lives with her mother. And that's what differentiates this from other cases. The petitioner's father is not the sole caregiver, in fact, is the record shows petitioner's father. The mother's illiterate, right? The mother is illiterate, yes, Your Honor, according to the record. But the petitioner has not actually even lived with his daughter for the entire period. He's living with her now, according to the record, Your Honor. But the mother has been a continuous presence. She's there to provide support. Again, maybe not the same support as her father, as the record shows, but she will continue to receive the support, presumably, if Ms. Mitten petitioner hasn't demonstrated otherwise. Your Honor, I see I'm out of time. So unless there are any questions from the court, the government rests on this brief. All right. Well, thank you very much. Mr. Cabranes, I think your time had almost run out, but I'll give you a minute if you need it. Thank you, Your Honor. Your Honor, I just feel the need to address the Chief Counsel's response. There is nowhere in that decision that the immigration judge referenced Ms. Mitten's testimony. He does indicate witnesses, but under Marsh, you're supposed to apply the facts and the testimony to the law. And it doesn't appear anywhere in that decision that the immigration judge did that. And in fact, if you review, and I'm sure you have, the decision by the Board of Immigration Appeals, they essentially just rubber stamp the decision, and they don't get into a discussion. So what the decision is, is essentially the IJ's decision, and our position is it was arbitrary and capricious. Thank you for your time. Thank you very much. Thanks to both counsel. We will take this case under advisement, and the court will be in recess.